UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMY VASQUEZ, individually and as representative of the estate of Peter Nicholas Fiorentino, Jr., deceased, and as Next Friend of Marcella Katelyn Fiorentino, a minor child<br><br>       Plaintiff,<br><br>  v.<br><br>GLOUCESTER COUNTY, GLOUCESTER COUNTY SHERIFF DEPARTMENT, CARMEL M. MORINA, individually and in his official capacity as Sheriff of Gloucester County, GLOUCESTER COUNTY EMERGENCY MEDICAL SERVICE, ANDY LOVELL, individually and in his official capacity as Chief of Gloucester County Emergency Medical Service, and DEFIBTECH, LLC,<br>       Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-4146<br>      (JEI/JS)<br><br>**OPINION** |

LAW OFFICE OF AMY VASQUEZ
By: Amy Vasquez, Esq. (Pro se)
3 West Union Street
P.O. BOX 699
Burlington, NJ 08016
    Counsel for Plaintiff

MADDEN & MADDEN, PA
By: Patrick J. Madden, Esq.
108 Kings Highway East, Suite 200
PO Box 210
Haddonfield, NJ 08033-0389
    Counsel for Defendants Gloucester County, Gloucester County
    Sheriff Department, Carmel M. Morina, Gloucester County
    Emergency Medical Service, and Andy Lovell

1

```
CIPRIANI & WERNER PC
By:  David G. Volk, Esq.
     Ernest F. Koschineg, III, Esq.
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
     Counsel for Defendant Defibtech, LLC
```

**IRENAS**, Senior District Judge:

Plaintiff Amy Vasquez, whose husband went into cardiac arrest at the Gloucester County Courthouse in Woodbury, New Jersey, and subsequently died, filed a Complaint on July 8, 2013 (Dkt. No. 1, "Compl.") against Defendants Gloucester County, Gloucester County Sheriff Department, and Carmel M. Morina (individually and in his official capacity as Sheriff of Gloucester County)(collectively, "Gloucester Sheriff Defendants"); Defendants Gloucester County Emergency Medical Service ("GCEMS") and Andy Lovell (individually and in his official capacity as Chief of GCEMS) (collectively, "GCEMS Defendants"); and Defendant Defibtech, LLC ("Defibtech").

Against Gloucester Sheriff Defendants and GCEMS Defendants (collectively, "Gloucester Defendants"), Plaintiff alleges claims of failure to train or supervise and dangerous condition of property, brought under 42 U.S.C. § 1983 (in violation of the Fourteenth Amendment) and the New Jersey Tort Claims Act.[1] Against Defendant Defibtech, Plaintiff's only remaining claim

---

[1] Plaintiff also seeks wrongful death, survivorship, and loss of consortium damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1988.

alleges a products liability failure to warn, all other claims having been dismissed by this Court on April 21, 2014 (see Order Granting Partial Motion to Dismiss, Dkt. No. 33).

Presently before the Court are Gloucester Defendants' Motion for Summary Judgment, Dkt. No. 44 ("GMSJ")[2] and Defibtech's Motion for Summary Judgment, Dkt. No. 45 ("DMSJ").[3]

## I. Relevant Facts

On July 7, 2011, Peter N. Fiorentino, Jr. ("Decedent") went into cardiac arrest while in a conference room at the Gloucester County Courthouse in Woodbury, New Jersey, and subsequently died on July 11, 2011, without regaining consciousness. (Gloucester Defendants' Statement of Material Facts, Dkt. No. 44-1 ("GSOF") ¶¶ 1-2, 15)

Two attorneys, Carol A. Weil and Joseph Kunecki, were seated at a conference table with Mr. Fiorentino when he began to unexpectedly "slur[] his words and/or mak[e] a sound similar to a snore." (Id. ¶¶ 3-5) Theresa McNellis had also entered the room immediately prior to Decedent collapsing sideways, and she notified Sheriff's Officer Lisa Vernacchio in the hallway

---

[2] GCEMS appears to have already moved for summary judgment along with other Gloucester Defendants (Dkt. No. 44) but again explicitly joins that motion through a separate filing (Dkt. No. 48). In any case, the Court assumes that the motion filed at Dkt. No. 44 speaks for all Gloucester Defendants.

[3] The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

that an ambulance was needed immediately.  (Id. ¶¶ 6-7, 9)  Officer Vernacchio responded to the conference room, radioed for assistance and requested that 911 be called.  (Id. ¶ 10)

Either "immediately thereafter" (id. ¶ 11) or "more than a minute" later (Pl.'s Statement of Facts, Dkt. No. 49-1 ("PSOF") ¶ 11), a number of other sheriff's officers responded to the conference room.  (GSOF ¶ 19)  Officer Thomas Accoglio attempted to wake Decedent using a "sternum rub" technique, checked for a pulse, told Sheriff's Sergeant Bruce Scott that they were going to need the automatic external defibrillator ("AED"), and proceeded to administer CPR with assistance from Officer Kevin Sweeney.  (Id. ¶¶ 21-24)  Sergeant Scott in the meantime asked Officer Christine Montgomery[4] to retrieve the AED, which Officer Accoglio then applied to Decedent.  (Id. ¶¶ 25, 31)  The AED began to analyze, requested and issued a cardiac shock, and CPR was continued.  (Id. ¶¶ 32-33)  After three cycles of CPR, the AED may or may not have started to analyze a second time but it is undisputed that it did not request a second cardiac shock.  (Id. ¶ 34, PSOF ¶ 34)

Paramedics and County EMS then arrived and worked with Officer Sweeney and Officer Accoglio to continue administering medical care.  (GSOF ¶¶ 35, 37)  At this time, Decedent

---

[4] Parts of the record refer to Officer Montgomery by her maiden name Petsch.

4

recovered a pulse and with assistance from Officers Accoglio and Sweeney, was taken to a hospital. (Id. ¶¶ 39-40) However, he never regained consciousness and ultimately died on July 11, 2011, from anoxic encephalopathy due to lack of oxygen to the brain during his cardiac event. (Id. ¶¶ 41-42)

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed Cir. 2001). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 249, 252 (1986).  The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Id.*

### III. Discussion

The Court understands Plaintiff's Complaint to allege (1) claims against Gloucester Defendants for failure to supervise or train and for a dangerous condition of property pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution; (2) claims against Gloucester Defendants for failure to supervise or train and for a dangerous condition of property pursuant to the New Jersey Tort Claims Act ("NJTCA"); and (3) a claim against Defibtech for a products liability failure to warn.[5]

Defendants argue that no genuine issues of material fact remain and move for summary judgment.  First, Gloucester Defendants seek summary judgment on Plaintiff's § 1983 claim arguing that there is no evidence that Decedent suffered a deprivation of a federal right or that such deprivation was the result of a County policy or custom or failure to supervise or

---

[5] It is not entirely clear from the Complaint whether Plaintiff is attempting to plead her claims for failure to supervise or train and for dangerous condition of property pursuant to § 1983, the NJTCA, or both.

train.  Second, Gloucester Defendants seek summary judgment on Plaintiff's NJTCA claim arguing that Gloucester Defendants are entitled to good faith immunity and that there is no evidence of either a negligent failure to train or supervise or of a dangerous condition of property.[6]  Third and finally, Defendant Defibtech moves for summary judgment on the grounds that there is no evidence that Defibtech failed to provide adequate warnings or instructions with the AED in question, because there is no admissible evidence that the AED malfunctioned at all.

In evaluating these arguments, the Court views the facts in the light most favorable to Plaintiff as the non-moving party and draws all inferences in her favor.  Nonetheless, the Court will grant both motions for summary judgment in favor of Defendants.

**A. § 1983 Claim**

"To state a claim under § 1983, a plaintiff 'must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'"  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(*quoting Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

---

[6] Gloucester Defendants also argue that Plaintiff cannot establish proximate cause as a matter of law, but the Court does not reach these arguments.

There is no doubt that Gloucester Defendants acted under color of state law, but on the record presented, no rational jury could find that Decedent was deprived of a federally protected right.  Plaintiff argues that Decedent "was deprived of his life, liberty and pursuit of happiness, the ultimate in constitutional rights by the county employees charged with providing complete security for those in the county courthouses and those who responded" (Pl. Opp. Br., Dkt. No. 49 at 5), apparently in violation of the due process clause of the Fourteenth Amendment.[7]

> However,
>
> [t]he Due Process Clause of the Fourteenth Amendment does not impose an affirmative right to governmental aid, 'even where such aid may be necessary to secure life, liberty, or property interest of which the government itself may not deprive the individual.' *DeShaney v. Winnebago Cnty. Dept. of Social Svs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In particular, 'there is no federal constitutional right to rescue services, competent or otherwise.' *Brown v. Commonwealth of Pa. Dep't of Health*, 318 F.3d 473, 478 (3d Cir. 2003).

*Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 363 (D.N.J. 2013).

---

[7] More specifically, Plaintiff alleges that Gloucester Defendants violated Decedent's "clearly established Constitutional right to life, liberty, and equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution." (Compl. ¶ 37)  The Court finds no facts supporting an equal protection claim or a Fifth Amendment claim (which would apply only to federal defendants) and interprets this language as an attempt to plead a violation of the due process clause of the Fourteenth Amendment.

In *Hottenstein*, this Court pointed out two exceptions which may create an affirmative duty: (1) when a 'special relationship' exists (usually a custodial relationship such as incarceration or involuntary commitment where the state affirmatively deprives the individual of the freedom to act on his own behalf) or (2) when a 'state-created danger' is involved, meaning "state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury than he would have otherwise been." *Id.* (internal citations and quotations omitted). Plaintiff shows a state-created danger when:

> (1) the harm caused was foreseeable and fairly direct, (2) a state actor acted with a degree of culpability that shocks the conscience, (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts ... and (4) a state actor affirmatively used his or her authority in a way that create a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 364 (*quoting Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013)). To show that a state actor acted with a degree of culpability that "shocks the conscience," especially "where state officials must make decisions in a 'hyperpressurized environment,' an intent to cause harm is necessary to satisfy the culpability standard." *Id.* (*quoting Sanford v. Stiles,* 456 F.3d 298, 309 (3d Cir. 2006)).

9

Neither exception applies here. Decedent was not in custody: he "was an attorney awaiting his next case to be called in a conference room outside a courtroom in . . . Gloucester County Courthouse[.]" (Pl. Opp. Br. at 2) Neither did Gloucester Defendants in any way create Decedent's threat to life: he suffered cardiac arrest, independent of any actions taken by Defendants, and died of a resulting lack of oxygen to the brain (anoxic encephalopathy) (GSOF ¶ 42). Moreover, it is undisputed that sheriff's officers responded within minutes, administered CPR, treated Decedent with an AED, called 911 to acquire additional assistance, and helped Decedent recover a pulse prior to being taken to the hospital. At least one witness testified that "none of the sheriff's officers appeared to be delaying providing care to Decedent" and that "they were 'very quick' and treating the situation as a 'true emergency.'" (GSOF ¶ 17). Plaintiff has offered no evidence to the contrary, and no rational juror could find that Gloucester Defendants' actions demonstrate an intent to cause harm or a degree of culpability that shocks the conscience. No state-created danger was therefore involved.

Because the due process clause of the Fourteenth Amendment consequently imposes no affirmative duty on Defendants, Plaintiff cannot show a deprivation of a federally protected

10

right.  The Court will therefore grant Gloucester Defendants' motion for summary judgment on Plaintiff's § 1983 claim.

**B. New Jersey Tort Claims Act**

Pursuant to the NJTCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. § 59:2-2.

Despite this provision, "[t]he guiding principle of the Tort Claims Act is that immunity from tort liability is the general rule and liability is the exception[.]"  *Coyne v. State, Dep't of Transp.*, 182 N.J. 481, 488 (2005)(internal quotation marks and citations omitted).  "The Legislature provided broad immunity protection for public entities because 'the area within which the government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done.'"  *Ogborne v. Mercer Cemetery Corp.*, 197 N.J. 448, 459 (2009)(*quoting* N.J.S.A. 59:1-2).

Here, however, Gloucester Defendants argue that they are entitled to good faith immunity pursuant to N.J.S.A. 59:3-3, which provides that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law."  (GMSJ Br., Dkt. No. 44-2 at 28)  This good faith statute

"confers an immunity on public employees for acts or omissions in the course of the enforcement of a statute, ordinance or regulation." *Frields v. St. Joseph's Hosp. & Med. Ctr.*, 305 N.J. Super. 244, 249, 702 A.2d 353, 355 (App. Div. 1997)(citations omitted). As in *Frields*, Gloucester Defendants have "cited no law which [their] personnel were administering or enforcing at the time of their response." *Id.*

Because Gloucester Defendants are therefore not entitled to good faith immunity pursuant to N.J.S.A. 59:3-3, the Court now turns to the merits of Plaintiff's NJTCA claims.

### a. Common law Failure to Train or Supervise

First, Plaintiff alleges against Gloucester Sheriff Defendants a negligent failure to train or supervise.

> Under New Jersey law, liability may be imposed on an employer who fails to perform its duty to train and supervise its employees. *Tobia v. Cooper Hosp. Univ. Med. Ctr.,* 136 N.J. 335, 346, 643 A.2d 1 (1994). Because this is a negligence claim, in order to establish a prima facie claim for negligent training, plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff. *Weinberg v. Dinger,* 106 N.J. 469, 484, 524 A.2d 366 (1987).

*Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010). "A plaintiff bears the burden of establishing [each of] those elements by some competent proof." *Townsend v. Pierre*,

12

221 N.J. 36, 51 (2015)(internal quotation marks and citations omitted).

Sheriff's officers and emergency medical response teams no doubt have a duty to respond to emergencies such as Decedent's. *See Praet v. Borough of Sayreville*, 218 N.J. Super. 218, 223, 527 A.2d 486, 488 (App. Div. 1987)(finding that police officers that responded to a car accident "were under a duty by virtue of their employment to render emergency assistance to victims of automobile accidents."); *Murray v. Plainfield Rescue Squad*, 210 N.J. 581, 590, 46 A.3d 1262, 1267 (2012) (noting lower court's conclusion that squad members had a pre-existing duty to render assistance).  However, Plaintiff has failed to provide any evidence from which a rational jury could conclude that Gloucester Defendants breached this duty to render assistance.

First, Plaintiff alleges that "[o]fficers did not respond to the scene initially with an AED[.]"  (Compl. ¶ 33)  She makes no argument, however, that Gloucester Defendants' duty of care demanded such specific actions.  Instead, the record reflects that Gloucester County's defibrillator policy requires sheriff's officers to "(1) identify that an emergency exists, (2) call 911, (3) start CPR, (4) use an AED and (5) transfer care to emergency staff."  (GSOF ¶ 49)  It is undisputed that Gloucester Defendants followed this procedure exactly (id.; PSOF ¶ 49): after identifying an emergency and calling 911, Officers

Accoglio and Sweeney started CPR while Officer Montgomery retrieved the AED; Officer Accoglio then utilized the AED to administer a shock prior to the arrival of GCEMS.  Plaintiff points to no standard that suggests that an officer who fails to initially bring an AED, prior to evaluating an emergency, calling 911, and starting CPR, is acting unreasonably.  Consequently, she has not stated a breach.

Second, Plaintiff argues that Gloucester Sheriff Defendants failed to mark the AEDs for public accessibility and that "officers on the scene reportedly did not know immediately where to locate the AEDs housed by their office in the building" (Compl. ¶ 33), both facts suggesting that it took an unreasonable amount of time to retrieve the AED.  However, even if the Court were to accept that there was no marking for public accessibility and that *some* officers were confused about the AED's location, Gloucester Defendants report that Officer Montgomery, after being told by Officer Scott to retrieve the AED, "ran to building control on the first floor, where she retrieved the AED" within "approximately a minute."  (GSOF ¶¶ 26, 30)  She "never was confused as to the location of the AED" and "did not have to search for" it "because she knew its exact location; specifically in a cabinet in building control."  (Id. ¶¶ 27-28)  She ran the AED back to the second floor to Officer

14

Sweeney, who ran it the rest of the way to the conference room. (Id. ¶ 29)

Plaintiff can point to no evidence that disputes this narrative. Plaintiff notes that Ms. Weil testified that a sheriff's officer asked the general public located in the courtroom where the AED was located. (Id. ¶ 27)[8] However, this evidence that one unidentified male officer asked where the AED was located, even if true, does not contradict Gloucester Defendants' assertion that Officer Montgomery (who is female) was able to retrieve the AED directly, possibly even as the male officer was asking his question.

Plaintiff offers no evidence from which a rational juror could conclude that Gloucester Defendants had a duty to train their employees to find and utilize the AED more quickly than the undisputed evidence indicates they did. The Court will therefore grant summary judgment in favor of Gloucester Sheriff Defendants on this claim.

In addition to her claims against Gloucester Sheriff Defendants, Plaintiff alleges that GCEMS Defendants "did not properly supervise or train employees to test the AEDs." (Id. ¶ 34) In order to state her claim, Plaintiff must first show that

---

[8] The parties agree that "other than identifying the sheriff's officer as male, Ms. Weil could not name the sheriff's officer and/or describe any other characteristics of the sheriff's officer." (GSOF ¶ 13)

the AED used to treat Decedent malfunctioned, proximately causing his death. The Court therefore considers whether any genuine issue of material fact remains on this point.

In support of her assertion that the AED malfunctioned (PSOF ¶¶ 34, 48), Plaintiff offers only the allegation that Dr. Enakshi Bajpai, the cardiologist who treated Decedent, told Plaintiff that the AED used on Decedent malfunctioned upon the second charge (GSOF ¶ 43-44; PSOF ¶ 34).[9] However, "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). Any such statement attributed to Dr. Bajpai, offered to prove that the AED malfunctioned, is inadmissible hearsay barred by Fed. R. Evid. 803.

Nor is any exception available: Dr. Bajpai has submitted an affidavit, but that affidavit explicitly denies that she ever

---

[9] There is no other evidence that the AED malfunctioned. *See* Lovell Aff. ¶¶ 10-15 (DMSJ at Ex. J, Dkt. No. 44-3 at 126-27). Plaintiff admits, for example, that there was no service code on the AED report indicating that the AED had cancelled a shock by error, as she alleges. (Pl. Dep. Tr. 62:24 – 63:14) Plaintiff attempts to question the AED report, because it displays a seemingly inaccurate time (PSOF ¶ 48), but as Defendant Andy Lovell explains, the discrepancy in time stamp is due to the AED report's use of "Coordinated Universal Time" or UTC; when the UTC time is converted to Eastern Standard Time, no discrepancy exists (Lovell Aff. ¶ 11). It is true that the AED delivered one shock and did not deliver a second, but the record indicates that the AED did not request a second shock (as opposed to requesting one upon analysis but failing to deliver it)(DSOF ¶ 34), that the AED may not request a shock if it detects a pulse (Weil Dep. Tr. 25:15-21), and that Decedent recovered a pulse at some point after the initial shock was delivered (Lovell Aff. ¶ 14).

"[made] any statement to [Plaintiff] or any other individual, regarding the functionality of the AED," that she ever "advise[d] Plaintiff that the AED applied at the Courthouse 'malfunctioned,'" or that she ever "review[ed] any data relating to the functionality of the AED[]."[10] (DMSJ at Ex. F, Dkt. No. 45-8 at 2)

Because no genuine issues of material fact remain regarding whether the AED malfunctioned, the Court will grant GCEMS Defendants' motion for summary judgment on her claim that GCEMS Defendants' failure to train or supervise their employees to regularly test the AEDs caused or contributed to Plaintiff's damages.

### b. Dangerous Condition

Plaintiff alleges that Defendants created a dangerous condition, pursuant to the NJTCA. "A plaintiff seeking to establish public entity liability under the Tort Claims Act must first demonstrate that the property defect complained of was a dangerous condition at the time of the injury," meaning "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *Charney v.*

---

[10] Rule 802 allows exceptions to the rule against hearsay when permitted by federal statute, and Fed. R. Civ. P. 56 permits affidavits for purposes of summary judgment. *See* Advisory Committee's Notes on Fed. R. Evid. 802.

*City of Wildwood*, 732 F. Supp. 2d 448, 453-54 (D.N.J. 2010) *aff'd,* 435 F. App'x 72 (3d Cir. 2011) (citing N.J.S.A. § 59:4-1(a) and N.J.S.A. § 59:4-2)(emphasis omitted). "A dangerous condition under the [NJ]TCA relates to the physical condition of the property itself and not to activities on the property." *Posey ex rel. Posey v. Bordentown Sewerage Auth.*, 171 N.J. 172, 188 (2002)(*citing Levin v. Cnty. Of Salem*, 133 N.J. 35, 44 (1993)). In *Levin,* plaintiff suffered a paralyzing injury when he dove off a bridge into shallow water. *Id.* at 37. However, the court affirmed the lower court's decision not to impose liability on defendants, because

> there was no missing plate, no broken bolt, no defect in the bridge itself that caused or contributed to cause the tragic accident. The danger arose because the bridge was where the shallow water was. No other activity or inactivity of the public entities in this case forms a basis for liability under the [New Jersey Tort Claims] Act such as the failure to adopt or enforce laws prohibiting diving, or to provide supervision of the diving[.]

*Id.* at 49-50.

Here, Plaintiff asserts in support of her dangerous condition claim that "the AED/s were not clearly marked nor immediately accessible to the sheriff on duty responding to the emergency" and "the AED/s malfunctioned while trying to resuscitate [Decedent] causing him to die from anoxic brain injury" due to Gloucester Defendants' "gross negligence" and

their "failure to train and supervise, failure to inspect, repair, main or replace, the AED/s." (Compl. ¶¶ 40-41) These allegations rely on "activit[ies] or inactivit[ies]" of the Gloucester Defendants rather than a physical condition of the Gloucester County Courthouse property. Consequently, they fail to state a claim for a dangerous condition. In addition, as already established, Plaintiff has failed to offer any evidence that the AED malfunctioned. The Court will therefore grant Gloucester Defendants' motion for summary judgment on Plaintiff's claim alleging a dangerous condition.

### C. Failure to Warn

Plaintiff alleges against Defibtech a failure to warn claim on the grounds that the AED used on Decedent "was defective and unreasonably dangerous when it left the possession of Defendant[] Defibtech" and that "it contained warnings insufficient to alert consumers to the dangerous risks associated with using the AED/s." (Compl. ¶ 60) Having failed to offer any evidence that the AED malfunctioned, Plaintiff cannot show that Defibtech's alleged failure to warn of a malfunction proximately caused her damages. The Court will therefore grant Defibtech's motion for summary judgment.

19

## IV.  Conclusion

For the reasons set forth above, the Court will grant both Defendants' motions for summary judgment in their entirety.  An appropriate Order accompanies this Opinion.

Date: June 25, 2015

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**
